Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES IN PART and AFFIRMS IN PART the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. An Opinion and Award in this matter was entered on May 5, 1995 by Deputy Commissioner Lawrence B. Shuping, Jr., which is incorporated by reference as if fully set forth herein.
2. The parties, through counsel, stipulated that the following records may be received into evidence without the need for further authentication or verification:
 a. Stipulated Exhibit 1, a document entitled Dr. Elkins' N.C. Gen. Stat. § 97-27 Report and Other Reports, consisting of 26 pages,
 b. Stipulated Exhibit 2, relevant Commission procedural documents leading to the June 6, 1996 de novo hearing.
***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. On March 7, 1991, plaintiff, a 51 year old woman, slipped and fell going into work sustaining an admittedly compensable back injury which has been the subject of multiple prior Industrial Commission Awards of temporary total and permanent partial disability. By Opinion and Award, dated May 5, 1995 Deputy Commissioner Lawrence B. Shuping, Jr., found plaintiff had sustained a substantial change of condition and awarded plaintiff additional total disability compensation at a rate of $306.42 per week from September 24, 1993 and thereafter continuing at the same rate so long as she remains totally disabled. Deputy Commissioner Shuping further ordered that defendant pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the substantial change of condition to the extent that such medical treatment is reasonably designed to effect a cure, provide needed relief from and/or lessen the period of disability. Deputy Commissioner Shuping specifically included the psychiatric treatment which was being provided by Dr. Branham and any other treatment he may reasonably recommend that would tend to reduce plaintiff's chronic incapacitating pain such as a return to the pain clinic that had previously treated her.
2. On July 26, 1995, the defendant-employer's adjusting agent, Alexsis, contacted the Greensboro, North Carolina office of Robert W. Elkins, M.D., who does not treat injured workers, to schedule an Independent Medical Examination of the plaintiff.
3. Dr. Elkins practices medicine through a corporation called Complex Medical Evaluations (CME). CME offers three levels of medical evaluation to insurers:
 1. An orthopaedic IME including history, physical, review of medical records;
 2. An orthopaedic and psychologic IME including the basic exam plus complete psychological exam, including multiple psychological tests, interview with psychologist and combined report to include psychologic and physiologic impressions; and
 3. Orthopaedic, psychologic, functional capacity evaluation including the basic exam, psychological exam, plus physical therapy exam with a combined report from all three specialties.
4. Defendant elected to have Dr. Elkins perform option 3, which included an orthopaedic, psychological and functional capacity evaluation. Defendant-employer requested that Dr. Elkins perform this evaluation for the purpose of determining plaintiff's diagnosis, prognosis, and ability to perform work at that time. The initial appointment was scheduled for September 7, 1995 for plaintiff to undergo orthopaedic and psychological examinations, with an additional appointment scheduled for September 8, 1995 for plaintiff to undergo a functional capacity evaluation to be performed by a physical therapist with Rehability.
5. As a matter of course, Dr. Elkins refers out the psychological and functional capacity evaluation portions of the examination and did so in the plaintiff's case. The plaintiff was referred, as was Dr. Elkins' usual practice, to Dr. Hoover, who is the psychologist usually used by Dr. Elkins' practice and to Rehability for the performance of a functional capacity evaluation.
6. In early August, 1995, plaintiff communicated her agreement to the proposed appointments scheduled for September 7, 1995, for her to undergo orthopaedic and psychological examinations by "duly qualified physicians," but declined the request that she submit herself for an additional appointment scheduled for September 8, 1995, for her to undergo a functional capacity evaluation to be performed by a physical therapist — not a "duly qualified physician" — with Rehability. She proposed, instead, that any functional capacity evaluation be conducted in Winston-Salem at either North Carolina Baptist Hospital or the Martinat Center, and that, if so arranged, she would agree thereto in spite of the provisions of N.C. Gen. Stat.97-27(a) requiring that such examinations be made by a "duly qualified physician".
7. On September 7, 1995, plaintiff submitted herself for medical examination by Dr. Robert Elkins and for psychological examination by psychologist Gary Hoover.
8. Subsequently, the plaintiff withdrew her earlier objection, and submitted to the functional capacity evaluation by Rehability on October 20, 1995.
9. Plaintiff's original objection to the scheduled testing by a physical therapist at Rehability was based upon a reasonable interpretation of the law and was therefore justifiable. Plaintiff's objection to the functional capacity evaluation by a physical therapist at Rehability did not constitute a refusal to submit to a functional capacity evaluation. Plaintiff proposed two other facilities from which defendant could select for the functional capacity evaluation. Dr. Elkin was not opposed to having the functional capacity evaluation done through another facility.
10. The defendant did not seek an order from the Industrial Commission compelling the plaintiff to submit herself for a functional capacity evaluation to be performed by a physical therapist with Rehability after plaintiff objected.
11. The defendant is not entitled to suspend plaintiff's compensation benefits for the period of September 8, 1995, until October 20, 1995, when she agreed to submit to the functional capacity evaluation by a physical therapist at Rehability.
12. The defendant filed an I.C. Form 24 Application to Stop Payment on April 7, 1997, while his case was on appeal to the Full Commission and again requested a suspension of compensation benefit payments to the plaintiff, alleging that the plaintiff unjustifiably refused the employer's offer of suitable employment on March 14, 1997. The defendant has also requested additional depositions pursuant to this motion.
***********
Based on the foregoing Stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's objection to the functional capacity evaluation by a physical therapist at Rehability as part of an Independent Medical Examination pursuant to N.C. Gen. Stat. § 97-27 was based upon a reasonable interpretation of the law. The Full Commission is not deciding whether plaintiff's interpretation is correct.
2. Plaintiff's objection to a functional capacity evaluation by someone other than a "duly qualified physician or surgeon" along with plaintiff's proposal that the functional capacity evaluation be done by either of two other suggested facilities did not constitute a refusal to be examined or obstruction of an examination requested by defendant during the period from September 8, 1995 through October 20, 1995. Defendant is not entitled to suspend compensation to plaintiff during said period.
3. A functional capacity evaluation clearly qualifies as a "rehabilitative procedure" under N.C. Gen. Stat. § 97-25, but defendant would not be entitled to suspend benefits under this section unless plaintiff refuses a functional capacity evaluation after being ordered to submit to same by the Industrial Commission. Defendant did not request and the Industrial Commission did not order plaintiff to submit to a functional capacity evaluation by a physical therapist at Rehability.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. The Deputy Commissioner's suspension of the plaintiff's right to compensation for total disability from September 7, 1995 to October 20, 1995 is REVERSED. The Opinion and Award by Deputy Commissioner Lawrence B. Shuping, Jr. dated May 5, 1995, finding that plaintiff had sustained a substantial change for the worse in her back condition beginning September 23, 1993 and awarding medical and indemnity compensation shall remain in full force and effect.
2. Defendant shall pay plaintiff temporary total disability compensation during the period from September 8, 1995, through October 20, 1995 and for any other period for which plaintiff has not been paid compensation since September 24, 1993, pursuant to the Opinion and Award of Deputy Commissioner Shuping.
3. This case is to be re-docketed before a deputy commissioner for a hearing of the question raised by the defendant as the whether or not the plaintiff has improperly refused suitable employment for which she is qualified and able to perform. All requests for additional depositions appropriate thereto shall be directed to the deputy commissioner before whom such matter is scheduled.
4. The costs of this proceeding shall be borne by the defendant.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ________________ LAURA K. MAVRETIC COMMISSIONER